UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE PETERS,

                        Plaintiff,

-against-

CORRECTION OFFICER HUTTEL, et al.,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/15/2022

No. 15-CV-9274 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Tyrone Peters ("Plaintiff") brings this action, *pro se*, against Defendants Correction Officer ("CO") Daniel Huttel, CO Jeffrey Erns, and Sergeant Duane Malark (collectively, "Defendants") asserting several claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 92.) Presently before the Court is Defendants' motion to enforce an oral settlement agreement. (ECF No. 134.) For the following reasons, Defendants' motion is DENIED.

## BACKGROUND

### I. Factual Background

    The Court assumes familiarity with the underlying facts that gave rise to this lawsuit. *See Peters v. Huttel*, No. 15-cv-9274 (NSR), 2019 WL 6619602, at *1–7 (S.D.N.Y. Dec. 5, 2019) (ECF No. 92.)

### II. Procedural Background

    Plaintiff commenced this action on November 23, 2015. (ECF No. 2.) After the close of discovery, Defendants moved for partial summary judgment, which the Court granted on December 5, 2019. (ECF NO. 92.) On September 25, 2020, a Pretrial Conference was held, and the Court directed Defendants to advise the Court if they were interested in settling. (ECF No. 103.) On January 13, 2021, Defendants wrote a letter to the Court and Plaintiff stating that they

1

had taken a no pay position in the matter. (*Id*.) Trial was set for September 27, 2021.

On July 20, 2021, the parties had a telephone call where Plaintiff made a settlement demand of $300.00. (Declaration of Counsel in Support of Defendants' Motion to Enforce Settlement ("Horan Decl.") ECF No. 136 ¶ 4.) On August 20, 2021, Defendants offered Plaintiff $300.00 to dismiss the case with prejudice and a full release of liability against the Defendants, the State of New York, its agencies, departments, and officials. (*Id*. ¶ 7.) Plaintiff agreed to accept Defendants' offer. (*Id*. ¶ 8; Affidavit in Support of Plaintiff's Response to Defendant's Motion to Enforce Settlement ("Peters Aff.") ECF No. 126 ¶ 10.) Defendants then wrote a letter to the Court stating the parties had settled. (ECF No. 119.) Specifically, Defendants stated, "today the parties came to an agreement to resolve this matter through settlement" and that they were "preparing the necessary settlement paperwork" and would "file a stipulation as soon as possible." (*Id*.) On August 23, 2021, the Court issued a 60-day order discontinuing the case. (ECF No. 122.) On or about August 31, 2021, Defendants received a letter sent by Plaintiff dated August 21, 2021 that indicated he intended to rescind his agreement and proceed to trial. (Horan Decl. ¶ 10 & Ex. A.)

Defendants filed a motion to enforce the settlement agreement on January 4, 2022. (ECF No. 134.) Plaintiff filed an opposition on December 29, 2021. (ECF Nos. 126 & 127.)

## DISCUSSION

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it", *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974), however, "[s]ettlements of any claim are generally required to be in writing or, at minimum, made on the record in open court." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 326 (2d Cir. 1997). Settlement agreements are contracts, and "interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005). "Parties may enter into a binding contract orally, and the intention to commit an

2

agreement to writing, standing alone, will not prevent contract formation." *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007). Formation of such a contract is determined by the parties' objective expressions of intent, including their words and actions. *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) ("What matters are the parties' expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances."). As such, the parties' intent should be discerned from the totality of the circumstances. *Id.*

The Second Circuit has not addressed "the question of whether a district court should apply federal or state law to decide a motion to enforce a settlement." *Acun v. Merrill Lynch, Pierce, Fenner, & Smith*, No. 18 Civ. 7217 (GBD) (SN), 2020 WL 3002225, at *2 (S.D.N.Y. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 995887 (S.D.N.Y. Mar. 2, 2020). Therefore, the Court will consider the enforceability of the oral agreement under both New York law and federal common law. *See, e.g., Aberra v. City of New York*, No. 18 Civ. 01138 (LAK) (SLC), 2020 WL 11772386, at *5 (S.D.N.Y. July 31, 2020) (considering enforceability of settlement agreement under both New York law and federal common law).

I.   **New York Law**

Section 2104 of New York's Civil Practice Law and Rules provides that:

> [a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him [or her] or his [or her] attorney or reduced to the form of an order and entered.

N.Y. C.P.L.R. § 2104 ("Section 2104"). Therefore, New York law "requires that a settlement agreement be set forth in writing or entered into the record by counsel in open court." *Meltzer v. Stier*, No. 15 Civ. 6184 (KPF), 2017 WL 5032991, at *4 (S.D.N.Y. Nov. 2, 2017). However, courts have held that an oral settlement agreement is enforceable where it "substantially complies" with Rule 2104. *See Alvarez v. City of New York*, 146 F. Supp. 2d 327, 338 (S.D.N.Y. 2001) ("New

3

York courts view the 'open court' requirement of CPLR § 2104 as a 'technical term that refers to the formalities attendant upon documenting the fact of the stipulation and its terms, and not to the particular location of the courtroom itself.'") (citing *Popovic v. New York City Health & Hosps. Corp.*, 579 N.Y.S.2d 399, 400 (1st Dep't 1992)).  Substantial compliance has been found where "(1) [after the parties agreed in the presence of the court to settle] the court entered notice of the settlement in its calendar and computer records . . . (2) the settlement was reached on the record at a deposition or settlement conference . . . or (3) the settlement was reached at or following a settlement conference before the court . . . ." *Id.* (internal citations omitted).

Here, it is clear that the facts of this case fail to satisfy Section 2104.  The parties agree that the settlement was never placed in writing or entered into the record in open court.  Further, the Court cannot hold that the parties substantially complied with Section 2104 when Defendants filed a letter with the Court informing it that the parties had reached an agreement.  *See Rosenberg v. Inner City Broad. Corp.*, No. 99 CIV 9579 AKH, 2001 WL 995349, at *1–3 (S.D.N.Y. Aug. 30, 2001) (denying motion to enforce the settlement where Plaintiffs' counsel sent a letter to the court stating the parties had reached a settlement and would submit a stipulation once the settlement was consummated as it was unenforceable under Section 2104).

Accordingly, the settlement agreement is unenforceable under Section 2104.

## II.     Federal Law

The Second Circuit has provided several factors for courts to evaluate in determining whether the parties intended to be bound by an oral agreement: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually

committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). The Court will evaluate each factor below.

      a. *Express Reservation of Right Not to Be Bound*

The first factor examines "whether there has been an express reservation of the right not to be bound in the absence of a writing[.]" *Winston*, 777 F.2d at 80. However, even where there is no *express* reservation, "the language and conduct of the parties can nevertheless 'reveal such an intent.'" *Sprint Communs. Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014) (citing *Winston*, 777 F.2d at 81); *see also Lyman v. New York & Presbyterian Hosp.*, No. 11-CV-3889 (AJN) (JCF), 2012 WL 6135354, at *5 (S.D.N.Y. Dec. 11, 2012) ("Although this factor is phrased in terms of 'express' reservations, courts . . . also analyze whether the particular facts and circumstances of the case . . . demonstrate an implied reservation of the right not to be bound until the execution of a written agreement."), *report and recommendation adopted*, No. 11-CV-3889 (AJN) (JCF), 2013 WL 427178 (S.D.N.Y. Feb. 1, 2013).

Defendants aver the first factor weights in favor of enforcing the settlement, as Plaintiff "unequivocally" agreed to settle the case and release all claims against them. (Defendants' Memorandum of Law in Support of Their Motion to Enforce Settlement ("Defs.' Mem.") ECF No. 137 at 5.) In response, Plaintiff alleges during their call that Defendants' counsel told him the settlement would not be finalized until the documents were signed, and he initially accepted the offer with this in mind. (Plaintiff's Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion to Enforce Settlement ("Pl.'s Opp.") ECF No. 127 at 5-6.) While both parties did appear to consider their phone call to be an agreement, Defendants do not dispute that their counsel told Plaintiff the agreement would not be finalized until after the settlement was set in writing. Therefore, the Court will hold that the facts of this case demonstrate that Plaintiff had an implied reservation of the right not to be bound until the execution of a written agreement, and the

first factor weighs against enforcing the settlement.

      b.  *Partial Performance*

"The second factor under the Winston test is met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the party disclaiming the existence of an agreement." *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002), *report and recommendation adopted*, 263 F. Supp. 2d 241 (E.D.N.Y. 2002). Here, it is clear that no party has performed under the oral agreement, as Defendants did not pay Plaintiff or even send him any settlement papers. (Defs.' Mem. at 5; Pl.'s Opp. at 6.) Merely informing the Court of the agreement is not partial performance. *See Delyanis v. Dyna-Empire, Inc.*, 465 F. Sup. 2d 170, 175 (E.D.N.Y. 2006) (holding there was no partial performance where the defendants' counsel emailed the mediator and stated he or she could inform the Court of the settlement). Therefore, the second factor also weighs against enforcing the settlement.

      c.  *All of the Terms*

The third *Winston* factor looks at "whether all of the terms of the alleged contract have been agreed upon[.]" *Winston*, 777 F.2d at 80. "The Second Circuit has clarified that the third *Winston* factor should evaluate whether the parties have agreed 'on all material terms.'" *Brannon v. City of New York*, No. 14 Civ. 2849 (AJN), 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016) (citing *Ciaramella*, 131 F.3d at 325).

Here, the parties dispute whether or not all of the material terms of the agreement were agreed upon. Defendants aver that all "material terms" of the agreement were agreed upon during the parties' phone call, including the amount of the settlement and the release of all Defendants. (Defs.' Mem. at 6.) In response, Plaintiff alleges that the terms of the agreement included that Defendants be reprimanded or counseled, but at the end of the call counsel for Defendants only agreed to relay Plaintiff's concerns to Defendants, and therefore all of the terms were not agreed

upon. (Pl.'s Opp. at 6-7.) Defendants dispute this. (Defendants' Reply Memorandum of Law in Further Support of Their Motion to Enforce Settlement ("Defs.' Reply") ECF No. 140 at 3.) However, Plaintiff's August 21, 2021 letter sent to Defendants states that he

> requested upon the agreement that [Defendants' counsel] speak to C.O. Huttel about the assault which he bestowed upon [him] on November 21, 2012, and requested that [Defendants' counsel] inform[] him to stop such activities to any other inmates in the future. [Defendants' counsel's] response to [the] request . . . was that [he would] pass on to him and the other 2 (Two) officers [Plaintiff's] lingering concerns about the case, which [Plaintiff] found to be very condescending and an attempt to state that [Defendants' counsel] still did not believe that [his] clients committed any violations.

(Horan Decl. ¶ 10 & Ex. A.) Therefore, it appears that at least one material term, whether and how Defendants' counsel would speak to Defendants, had not been agreed upon. *See Forden v. Bristol Myers Squibb,* 63 F. App'x 14, 16 (2d Cir. 2003) (denying motion to enforce a settlement agreement after the parties advised the court they had reached a settlement and read the settlement terms into the record, but subsequent attempts to agree on a material term in the written agreement failed). Accordingly, the third factor weighs against enforcement.

### d. Type of Contract Usually Committed to Writing

The last *Winston* factor asks, "whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80. Defendants concede that "most settlement agreements resolving litigation with the Office of the Attorney General are committed to writing." (Defs.' Mem. at 6.) This is also clear by Defendants' letter to the Court which states the parties were "preparing the necessary settlement paperwork" and requested sixty days to submit a stipulation. (ECF No. 119.) Therefore, the fourth factor clearly weighs against enforcing the settlement.

Overall, the *Winston* factors as a whole indicate that the parties did not intend to be bound by the oral agreement. Further, courts in similar circumstances have declined to enforce oral

settlement agrees. *See Gaul v. Chrysler Fin. Servs. Ams., LLC*, No. 1:13-cv-433, 2014 WL 1466491, at *1; 7 (N.D.N.Y. Apr. 15, 2014) (denying motion after the defendant reported to the court that the parties had reached a settlement agreement but the plaintiffs never returned a signed settlement agreement as "whatever 'agreement,' the parties attempted to reach over Plaintiffs' claims could not be reduced to writing" and therefore the court found that "no agreement to settle the case was ever reached").

Accordingly, the Court will deny Defendants' motion.

## CONCLUSION

For the foregoing reasons, Defendants' motion to enforce the settlement agreement is DENIED. The parties are directed to appear for a telephonic pre-trial conference on May 17, 2022 at 2:30 PM. It is Defendants' responsibility to make prior arrangements with the appropriate facility to have Plaintiff participate via telephone. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 134. The Clerk of Court is further respectfully directed to mail a copy of this Opinion & Order to the *pro se* Plaintiff at the address listed on ECF, and to show proof of service on the docket.

Dated: April 15, 2022   SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge